Thank you, Your Honor. Good morning. May it please the Court. My name is Matt Kinnay. I'm counsel for the appellant Wild West Institute and Alliance for Wild Rockies. This case concerns whether the Forest Service's timber sale categorical exclusion rules complies with the requirement that they must not permit activities that individually or cumulatively have a significant impact. Is this issue going to be addressed in the Earth Island case? No. The relevance of the Earth Island case is relative to the ripeness and standing questions. Yes. So the question that's front and center, there's several in the Summers v. Earth Island case, but the front and center one is whether a facial challenge to an agency regulation may be brought, as it was there and here, or whether you're limited to really as-applied challenges in the context of the summers. Isn't that involved in Earth Island? Yes, it is, Your Honor. That's really my question. So we probably need to hold this case many years. I think that's right, Your Honor. Timing-wise, it probably won't be a problem. I imagine the Court would issue a decision sometime this winter, and I know the Court usually takes several months to issue its decision. This panel doesn't necessarily. Oh, well, then. But I do think summers would be appropriate to wait for, and we'd be glad to submit any post-supplemental briefs after the decision comes out, if so requested. Now... Why shouldn't we follow the 10th Circuit decision in this case? Well, several reasons, Your Honor. The first is that after our briefs were filed in this case, this Court issued its decision in Sierra Club v. Bosworth, and it sets a framework for analysis that was not followed by the 10th Circuit. And what the Sierra Club v. Bosworth case said, and it looked at regulations that were companion regulations to this case, where there were categorical exclusion rules for prescribed fire burning and for mechanical treatment of thinning forests. And these came out around the same time, but these were limited to timber sales. And the Sierra Club v. Bosworth case said that in analyzing whether a rule properly implements the CEQ regulations requirement that they not have an individual or cumulative effect, the Forest Service and the Court has to go through the factors that are normally applicable to whether to do an environmental impact statement, and that's whether there are cumulative impacts, whether you have a controversial decision, so on and so forth. So that's one reason. The second reason is that the Colorado Wild case made no attempt to analyze or look at the evidence in the record from all the state agencies that said, universally said, these actions are simply too big to be categorically excluded. These timber sales, timber sales generally, but especially those of this size, are simply too big to be excluded. What the Colorado Wild decision did, it focused on the process and the issues we've also raised here related to the median versus mean size of the sales that are analyzed and the problem with the outliers. But it really didn't get into, which is probably the most important part of this case, and that is the simple fact that there's no record evidence for the idea that timber sales of this size do not have significant effects. And then there's also many sub-reasons, which we addressed in the briefs, the many reasons we think that the Court got some of these sub-issues wrong, but I think those are the two overarching decisions. And this panel really has a choice whether to follow Colorado Wild's Tenth Circuit decision or whether it really needs to adhere to the panel's decision in Sierra Club v. Osworth from this Court. And we think that, of course, because that's a Ninth Circuit decision, it makes much more sense to follow that panel decision and also because it's a better decided case. Now, just as in Sierra Club v. Osworth, we had many similar issues, many comments by the state wildlife agencies, which said that allowing actions of these size to be categorically excluded from an environmental assessment or environmental impact statement were simply too big. We had statements such as from the Wyoming Department of Game and Fish, which said that EA's and EIS's, were its primary means for being able to have input on game management on forest service lands, and now that's been taken away. We had comments from the Arizona Game and Fish Department related to the fact that, again, these are simply too big to be excluded and that there's a problem with only basing it on acreage and that oftentimes you'll have large, intensive treatments, which make a difference, not merely the acreage. So if you might have a 250-acre timber sale, that only takes 1,000 board feet, and maybe that isn't significant, but the problem is the rule allows millions of board feet to be cut, such as happened in the Camp Salvage Project. One of the problems in Sierra Club v. Osworth, and it's the same problem here, is the lack of any hard data to support the idea that these do not have significant impacts. One portion of the record that I didn't mention in the briefs is that excerpts of record, page 85, and that the letter from the Washington office to the regions of the Forest Service only allowed them two weeks from October 18th of 2001 to November 1st of 2001 to provide the data that was requested by the Washington office. And I think that's why you ended up with this problem of having 85% observational data, sort of a sign-off, check-off list by the Forest Service personnel, rather than any hard data to back it up. And that statement in Sierra Club v. Osworth as to the hard data, that's a reiteration of prior precedent from this court that we discussed in the briefs, such as the Idaho case. Now, another problem with the rule is that it allows roads to be built and allows that to be categorically excluded. And actually, as I made the misstatement, slight misstatement there, I want to point out that nothing about this case would prohibit the actions that are going forward, salvage timber sales, green timber sales, anything else. It's really just about whether NEPA has to be applied and require an environmental assessment or environmental impact statement so that the impacts can be studied and alternatives. As I understand the process, you can get a categorical exclusion, but it doesn't mean that you don't have some NEPA requirements to be met before you make that decision. So I'm not sure that an EA or an EIS is needed, but it in fact should comply with furnishing the information that is required. Well, from a technical standpoint of view, Your Honor, if you have a proper categorical exclusion rule and you apply it properly to an agency decision, you're absolutely correct that you don't need to then take the steps in an EA and EIS. But that's the problem here, and that's why we bring in a facial challenge to the rule rather than any individual application, is that simply going forward with a timber sale, especially if one of the magnitude allowed by the rules, without going through the things required by an EA simply is not permissible. And so, for instance, there are some things that the agency has to do when it does a categorical exclusion. But what it does not have to do, and that which an EA would require, for instance, is an analysis of alternatives. And that's perhaps one of the biggest, you know, it's the heart of the NEPA process, is the alternatives analysis. And that's been reiterated. But why? I'm sorry, Your Honor? You know, I have told this hypothetical nature of your challenges. Doesn't that back you up against a standing argument? You sort of give hypothetical, you know, whether the road is built or whether this is done. But why aren't those things properly raised as a prior challenge rather than a facial challenge? Maybe you can sort of address a standing argument in a little more detail. Yes, Judge Kaczynski. Again, I think the case in Summers v. Earth Island Institute will answer some of those questions because that was really front and center in the case, and that's part of the Forest Service's argument. But what I would say is the reason it makes sense to bring a facial challenge rather than raise these issues in an as-applied challenge is that we're not arguing that in one case or another it is having a bad result that produces an illegal effect. It's the whole point that any action of this size that is taken, any timber sale that's excluded under this is simply too large to be permitted under the rule. So that's why routinely courts have allowed facial challenges to regulations. It's because any application of the rule is invalid, and that's why it should be removed. And that was the iterations. Those were the comments of the state wildlife agency. I'm sorry. Any and all applications of the rule? I mean, what you have to say is that there's no application of the rule that would implicate these concerns. And I just, you know, it looks highly hypothetical to me. Well, the court in Sierra Club v. Bosworth raised the no set of circumstances test, perhaps, that you're referring to, Your Honor, and said it should not apply to a facial challenge of regulation of the type we have here. The problem, not only substantially with the rule, is also that it was adopted procedurally invalid, and anything that's adopted procedurally invalid, any use of it, would be improper. So we have the problem with, you know, because the Forest Service did not have any hard data to support the idea that timber sales of this size may be categorically excluded, they relied on this numbers exercise with taking the average numbers of timber sales they looked at and whatnot. But the problem is that it itself is arbitrary and capricious. So you have, they arrived at a salvage sale limit of 250 acres based on a mean average, and inflated largely because there just happened to be one 9,000-acre timber sale that ended up in the set. If you had taken that out, the average would have gone down to 147 acres. There might have happened to have been an 18,000 timber sale thrown in there, and that would have raised it up to 500 acres. I think it's the definition of arbitrary under the Administrative Procedure Act to set a regulation merely because some outlier happened to fall in the set. And that is a major problem with the rule here and why it needs to be set aside. Counsel, may I ask you about the Sierra case that you rely on? Does it make any difference that that case was not just harvesting, but it included fire, crushing, howling, thinning, pruning, cutting, chipping, mulching, and mowing, so it had a lot more activities involved than just timber harvest? Does that make a difference in terms of applying the analysis to this situation? I don't think so because you have the same sorts of problems throughout the case in Sierra Club v. Bosworth that you have here. There may have been one portion of the Sierra Club decision on the lack of specificity that may not be applicable here. But that was much more of a drastic program than we have here with simply timber harvest. Well, timber harvest is actually more intensive. I mean, that was one of the things discussed by all the state wildlife agencies is not just the cutting down of the trees, but also the skidding of the logs and dragging it out. That's why the Forest Service set the timber sale levels at much smaller than they did the fuel CE, which was up to 4,500 acres for burning or 1,000 acres for mechanical thinning. And, in fact, I think Judge Kleinfeld's concurrence in that case is interesting because he agreed ultimately with the panel's decision, but he seemed to disagree with the idea that the Forest Service shouldn't be allowed to categorically exclude things like thinning and similar actions like that. Here we have a much, I think, worse case for establishing a categorical exclusion because you're talking about actually doing timber sales, which have much greater impacts than merely thinning a forest would have. You think that's more? This was 2.5 million acres in Sierra. You think that's less drastic? I'm sorry, Your Honor. I'm not familiar with what that number refers to. Okay, because it says that involved treatment of more than 2,500,000 acres. Well, I can't tell you the exact number of acres that are going to be treated with this categorical exclusion, but I imagine it's on the same scale. If they're talking about throughout the national forest system, I'm sure it would be at least as much because you have many more timber sales, perhaps, than you do these large thinning operations. And I'm down to about five minutes. I reserve my time for rebuttal unless Your Honors have any more questions right now. That's fine. Good morning. May it please the Court. Charles Scott on behalf of the Forest Service. My first point was going to be that this Court should defer disposition of this appeal until Summers has been resolved, and on that point, I agree with opposing counsel that because of the factually analogous circumstances and the importance of the jurisdictional issues, this Court should wait until Summers has been decided, and if it feels necessary, order supplemental briefing. The two points I would like to make are generally, first, this categorical exclusion should be upheld on the same grounds that the Tenth Circuit identified in Colorado Wild, and second, that the Sierra Club v. Bosworth decision from last December does not compel a different result, and I'd be happy to explain why that is if there are any particular aspects of Bosworth that the Court is interested in. Well, what's your response to opposing counsel's criticism of the Tenth Circuit case on the basis that it did not address all of the criticisms that have been raised regarding the program? The argument in the Colorado Wild case was these public comments show that, in fact, the actions that you are covering in this categorical exclusion do have a significant impact on the environment. Now, the Forest Service is entitled to, has discretion to entitle on the expert opinion of its own scientists on whether an impact will be significant or not, and I would like to explain, Mr. Canais said that there was no data and very little analysis, just as in Bosworth. I'd like to explain what the process was, because I'm not sure we've made it entirely clear, in light of Bosworth. There were two sets of data on which this categorical exclusion was based. First, there were 306 past projects that were implemented in 1998 under the predecessor categorical exclusion. The Forest Service examined the number, the amount of acres, and the volume of timber affected per acre in all of those projects, and it determined that because projects implementing the prior categorical exclusion are subject to the same restrictions in terms of forest plan standards and guidelines, consultation requirements, and the presence of extraordinary circumstances, those 306 past projects are representative of what the application of the new CEs could be expected to be in a given year. And this is important, because Mr. Canais said that he expects the application here will be identical to Sierra Club v. Bosworth. That is absolutely controverted by the record. The categorical exclusion in Bosworth, the Forest Service estimated, would be applied to one and a quarter million acres annually, and even that was a prediction that was somewhat contingent on the risk of wildfires, because the categorical exclusion there was designed to implement the 10-year fire reduction plan of the Bush Administration's Healthy Forests Initiative. So given the uncertainty of wildfire risk, as I think Judge Kleinfeld noted in oral argument, even more acreage might be affected. The 306 past projects here affected 49,000 acres, 0.03% of the National Forest System lands, and the Forest Service said we expect that the new categorical exclusion, likewise, will probably affect up to 49,000 acres annually, far from 1.25 million acres annually. That was the first set of data. What is the expected future application of this categorical exclusion in amount and geographic scope? The second was a selection of 154 randomly selected past projects. The Forest Service looked at the documentation that had been prepared for those past projects, which in some cases consisted of decision memoranda, in others consisted of an environmental assessment, and then subsequently required Forest Service personnel to go back to the sites of those projects, look on the ground, and see did these projects have a significant impact on the environment. Counsel, on a different note, could you address Judge Kozinski's question regarding standing to facially challenge the regulation? I think that this will go back to the fact that this is an issue in summers. The Solicitor General's position is that the only proper subject of APA judicial review is the concrete application of a regulation to a specific project. In the absence of such a project, a facial challenge may not go ahead, because it may be speculative, just as Judge Kozinski said. So is it the Forest Service position that there can never be a facial challenge to a regulation until it's actually applied? That is, I believe, the position. That's the position taken by the Solicitor General in summers. Is that the position you take in this case? Yes. There are a couple of qualifications. The Solicitor General's brief noted that there is an exception to that when the statute implementing a regulation specifically provides for pre-enforcement review, such as the Clean Air Act, and that was at issue in the Supreme Court's Whitman v. American Trucking Associations case. And the other circumstance, which is reflected in the Supreme Court's Abbott Labs v. Gardner case, is where the existence of the regulation itself, prior to any specific enforcement, has such significant effects on primary conduct of individuals, such as the prospect of facing criminal or civil penalties if they don't comply, that the proper time for judicial review is when the regulation is promulgated and they are forced to change their behavior. But this all deals with the federal government's actions, right? Timber sales. There's no primary conduct involved by private parties. I just don't understand your position. That's correct. This would not be a case that would fall under Abbott Labs. And so the Solicitor General's position, which, of course, you're bound by here, is that past projects are past, and therefore no longer anything that happened in the past is gone, and anything in the future is speculative, and therefore the mere passage of a set of rules doesn't cause any injury, right? Any current injury. Is that the essence of the argument? I believe the Solicitor General's argument was framed under three separate headings. First, absent a concrete application, there is no proper subject of APA judicial review. Second, there is a standing problem when the concrete action, or I should say, for example, the project that was affecting a concrete interest that the plaintiff had has been eliminated. Standing cannot be based merely on a general procedural injury. There is no longer ñ there isn't a basis for standing. And the third heading under which the argument was made was that of mootness, that having been deprived of the concrete application, all that remains is a facial challenge to the regulation existing in a void. And some were reasonably confident to resolve this issue? I believe that given the jurisdictional nature of the issue and the various headings under which it was presented, we certainly agree with the appellants that it will likely have bearing on it. There were additional issues, such as whether a nationwide injunction is proper, but largely it was can a regulation be challenged in the absence of a specific application thereof. If I may get back to the basis for these categorical exclusions and how it differs from those in Sierra Club v. Bosworth, as I said, there were 154 representative past projects on which the Forest Service went back and checked. Did they actually have significant impacts? Did they meet forest plan and project standards? And if not, how so? And in view of the CEQ regulations defining significance, did they have a significant impact? Again, the results were of the 154 projects, none had a significant impact. The CEQ regulation defining categorical exclusions says that a categorical exclusion is proper for a category of actions which do not have a significant impact and which have been found not to have a significant impact. The Forest Service here made that finding, that the representative projects do not individually or cumulatively have a significant impact. And bound up in that is its determination that they would be applied on the same scope as the prior categorical exclusion for limited timber harvest was. 300 projects annually, maybe up to 49,000 acres, always subject to additional restrictions in forest plan standards and guidelines, consultation requirements, the presence of extraordinary circumstances. Counsel, do you agree with opposing counsel's position that timber harvest is more extreme than the activities that were taking place in Sierra? No. On two levels. First, you have to look at the sheer geographic scope of the actions authorized in the categorical exclusion in Sierra. I think it's the use of prescribed fire on up to 1,000 acres, mechanical thinning methods on up to, excuse me, I have that reversed, fire on up to 4,500 acres, mechanical thinning methods, which Your Honor went through, I won't attempt to remember the terminology of them, on up to 1,000 acres. And also the scope of its application was, again, expected to be at least one and a quarter million acres nationally, and it could be anywhere in the national forest system dependent on. Counsel, that was really what he was referring to. I think he was referring to the specific physical activities of harvesting versus what the other things were. Well, I think certainly the fact that you can only harvest green trees on up to 70 acres under this categorical exclusion makes it very different from being able to use mechanical thinning methods that would include cutting down some trees on up to 1,000 acres. The activity per se, let's consider that the categorical exclusions for salvage and sanitation harvesting are dealing with the after effects of a fire or a windstorm or ice, trees that have been damaged but still have some merchantable value. For the sanitation categorical exclusion on up to 250 acres, the purpose is to, the examples given are felling trees that have been infested by disease and insects, and which may, or adjacent trees that being cut down might prevent the extension. There is a serious mountain pine beetle epidemic in the forests in the northwest, and this categorical exclusion in part allows projects that may address that. It certainly, those projects will not have the ultimate answer to such a big problem, but I would say that no, it would not be an accurate characterization to say that these are more invasive than what was authorized in Sierra Club v. Bosworth. Just to get back to the data call, Mr. Canais said that there might have been an absence of data because there were only two weeks in which forests could actually provide this after the fact monitoring data. Excerpts of Record 85, the letter there says, please send us your monitoring data, we're following up on the letter that we already sent you on August 1st, giving you the instruction on how to provide this data. So there were at least three months, not two weeks. I think the two sets of data, this data showing this is how we expect this categorical exclusion to be applied, and we know from past experience that there aren't significant cumulative impacts individually or cumulatively. Excuse me. That was one of the problems that the Court identified in Bosworth. You can see that on page 1028 and also in Judge Kleinfeld's concurrence. They're saying you haven't given us an explanation of how you're getting to this. Here we have provided the explanation. We have two sets of data, project having no significant impacts on the environment, and the Forest Service, as instructed by the CEQ regulation, said we find that these projects do not have a significant impact on the environment, either individually or cumulatively. Another difference from Sierra Club v. Bosworth was, again looking at page 1028, the Court there believed that it was dealing not with a simple categorical exclusion for individual disparate activities, but with a programmatic nationwide action to implement the Healthy Forests Initiative. I think the Court's analysis of the requirements for a showing of significance must be read in light of that belief that it was looking really at a programmatic action. Here, in contrast, you're looking at disparate activities implementing timber sales. I wanted to also point out that these timber harvests have also, these limited timber harvest categorical exclusions have also been upheld by a district court in the 11th Circuit. The decision is wild law of the United States Forest Service, 471 F. Suff. 2nd. 1221. It is a comprehensive opinion upholding these categorical exclusions against analogous arguments to those made here. When was that decided? That was the Middle District of Alabama, Judge Thompson. When? Oh, excuse me. January of 2007. A quick point about the methodological arguments. This Court reiterated in Lance Counsel v. McNair that its position is not that of a super scientific board that is designed to second-guess scientific methodology. In light of McNair, I think that provides an additional reason why those methodological arguments, which ignore Forest Service expertise, should not be followed, that the categorical exclusions should be upheld under Colorado Wild's rationale. They are not. Bosworth does not counsel a contrary outcome. But, again, we agree with opposing counsel that disposition of this appeal should probably, should definitely wait until the Supreme Court has issued a decision in Summers. And if there are no further questions, I think I'll end there. Thank you, counsel. Thank you. Rebuttal. Thank you. The first point I would like to make is that even if there are fewer acres involved, and I have to admit your question, Your Honor, took me out of context. I wasn't sure about that. It appears maybe there probably is fewer number of acres involved. But there's still a big problem with the cumulative impacts because it's still a great number of acres that are implicated. And I would point to two things that are important here. One is the requirement in Sierra Club v. Bosworth that there be some sort of cumulative effects finding beyond a conclusory statement, and that was not done here as it was not done in Sierra Club v. Bosworth for those rules. And, secondly, I would... What do you want? What exactly do you want? Why isn't what they did here enough? And what can they say? I mean, they obviously looked, considered the possible sales as a whole, and obviously they were dealing with the impact of the entire program. What else could they say that would satisfy this requirement? Well, Judge Kaczynski, I think what we would need to see is something that addressed the comments that all those state agencies and tribal agencies raised. Without exception, they all raised this cumulative effects problem, which was not rebutted in any way by the Forest Service, that that did not exist. The Forest Service never addressed and went through those comments and said, Oh, we don't think there will be cumulative effects because... I'm sorry, Your Honor. Just as when an agency is required to do a cumulative effects analysis in making a determination as to whether to prepare an environmental impact statement, that's what Sierra Club v. Bosworth stated needed to be done for a categorical exclusion rule, and that was not done here. But the whole exclusion deals with, presupposes a series of projects. So it's not like they said, Oh, by the way, we just realized this thing might apply to a lot of other things. The whole exclusion was meant to deal with a series of projects. Why isn't that inherent in its analysis? It obviously dealt with the effects on the projects as a whole. Well, this panel would have to part ways with Sierra Club v. Bosworth to come to the conclusion that such an analysis is not required because it was very explicit that it was needed when issuing a categorical exclusion rule. And the very reason, the more practical reason beyond that legal reason why it's necessary, is because to take a look at all of the timber sales that might be approved under this and analyze what the cumulative effects in a watershed or in a forest might be. So, for instance, you have the Department of Game and Fish from Wyoming, the Wyoming Game and Fish Department, talking about how often most of the timber sales in Wyoming are under this size. And so you have this cumulative effects of all these timber sales which will never receive any environmental analysis and which has been exacerbated by the fact that the Forest Service no longer will be doing environmental impact statements for its forest plans. So it's escaping, even reviewed, most of the timber sales in a forest in Wyoming by adopting this rule. Now, it's true that in many contexts an agency doesn't need to accede to the comments, the public comments. It doesn't have to choose a specific commenter's path. But there's two reasons why that was problematic here. One is, again, as in Sierra Club v. Bosworth, the EIS factors as to whether there's a substantial controversy means that there may be significant effects. That's true here. You have all the state agencies that commented, not a single contrary argument presented by the Forest Service that these would have significant effects. There's definitely a substantial dispute about the nature and degree of impact that these rules would have. And where that's the case, you simply cannot make a categorical exclusion rule because that necessarily leads to a finding that the actions may be significant. And secondly, I would point out, even if in a circumstance that's not present here where an agency may dismiss the comments of public agencies, it needs to supply a reasoned basis for charting the course that it takes and not following the comments. And there is simply nothing in the record, just as was noted by the majority and concurrence of Judge Kleinfeld and Sierra Club v. Bosworth, stating that contradicting those comments that timber sales of this size would have significant impacts. And I see my time is up unless Your Honors have any further questions. No additional questions. Thank you. Thank you to both counsel. So the case is argued, is submitted for decision by the court, and we are recessed.
judges: Kozinski, Fletcher, Rawlinson